119 N.J. Super. 344 (1972)
291 A.2d 583
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ROBERT J. RUSSELL, GERALD T. HYAMS, a/k/a GERALD T. HYAMES, EDWIN FREDERICK PIERCE a/k/a ED PIERCE, AND AAPCO, INC., A CORPORATION CHARTERED UNDER THE LAWS OF PENNSYLVANIA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1972.
Decided June 12, 1972.
*345 Before Judges LEWIS, HALPERN and LORA.
Mr. Michael R. Perle, Deputy Attorney General, argued the cause for appellant (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. George T. Dougherty, Deputy Attorney General, of counsel and on the brief).
Mr. Archibald Kreiger argued the cause for respondent Robert J. Russell (Messrs. Orlando and Orlando, attorneys).
Mr. Timothy J.P. Quinlan, Assistant Deputy Public Defender, argued the cause for respondent Gerald T. Hyams (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. M. Allan Vogelson, attorney for respondent Edwin Frederick Pierce, submitted on brief.
PER CURIAM.
Defendants were indicted in May 1970 for alleged violations of the New Jersey Uniform Securities Law (1967) and charged with the following offenses:
*346 I. Willfully defrauding certain stockholders of AAPCO, Inc. (a Pennsylvania corporation with manufacturing headquarters in Pennsauken, N.J., and which conducted shareholders' meetings within Camden County) by willfully failing to disclose that they were attempting to sell or selling a greater number of shares of AAPCO stock than was authorized by the corporate charter, in violation of N.J.S.A. 49:3-52 and N.J.S.A. 49:3-70.
II. Willfully attempting to sell AAPCO securities which were not registered as required by the provisions of N.J.S.A. 49:3-60, contrary to N.J.S.A. 49:3-60 and N.J.S.A. 49:3-70.
III. Willfully conspiring to violate the provisions of the Uniform Securities Law (N.J.S.A. 49:3-47 et seq.) to wit:
(a) defrauding stockholders;
(b) employing unregistered securities agents to sell, and by selling without being registered as licensed securities agents, the stock of AAPCO;
(c) attempting to sell unregistered securities;
(d) willfully disregarding the lawful orders and subpoenas of the Bureau of Securities, contrary to N.J.S.A. 2A:98-1.
IV. Willfully attempting to sell through unregistered and unlicensed securities agents the stock of AAPCO. Defendants were arraigned and admitted to bail.
In preparation for trial, the State filed and served a trial memorandum and requests to charge setting forth principles of law which the State sought to have applied. A pretrial conference was held pursuant to R. 3:13-1. By order and memorandum the pretrial judge denied plaintiff's requests to charge as to the term "willful" as used in the New Jersey Securities Law. Motion for leave to appeal was granted.
The two denied requests to charge were as follows:
3. As the term "wilful" is used in the New Jersey Securities Law, it is not necessary that the person committing a violative act do so *347 with an evil motive or with a will to violate the law. It is required only that he intended or willed to do an act, which act was prohibited under the law.
4. It is no defense to a charge of willful violation of the New Jersey Uniform Securities Law that the defendant was ignorant of the law or its provisions.
The State contends that the Uniform Securities Law as adopted in New Jersey mandates absolute liability for violations of its provisions and that such violations are punishable without regard to the existence of criminal intent as it is known in the criminal law.
N.J.S.A. 49:3-70(a) provides:
Any person who willfully violates any provision of this act, except section 7, or who willfully violates any rule or order under this law, or who willfully violates section 7 knowing the statement made to be false or misleading in any material respect, shall be guilty of a misdemeanor and fined not more than $5,000.00 or imprisoned not more than 3 years, or both; but no person may be imprisoned for the violation of any rule or order if he proves that he had no knowledge of the rule or order. No indictment or information may be returned under this law more than 5 years after the alleged violation.
Whether a statute provides criminal sanctions for proscribed conduct without the necessity of proving criminal intent is a matter of legislative intent. Morss v. Forbes, 24 N.J. 341, 358 (1957).
In support of its contention, the State argues the language in the statute regarding the section 7 exception clearly indicates a legislative intent that knowledge is necessary only in cases of such section 7 (N.J.S.A. 49:3-54) violations. It states that such intention is further manifested by the provision that no one may be imprisoned for the violation of any rule or order if he proves that he had no knowledge of the rule or order.
There is no reported decision in this State passing on this issue under the Uniform Securities Law. However, some guidance can be obtained from analogous federal decisions as well as decisions of sister states which have enacted the Uniform Securities Act, particularly in view of the declaration of statutory policy set forth in N.J.S.A. 49:3-75:
*348 This law shall be so construed as to effectuate its general purpose to make uniform the law of those States which enact similar laws and to co-ordinate the interpretation and administration of this law with related Federal regulations.
The Commissioners' Note appended to section 409(a) of the Uniform Securities Act (the source of N.J.S.A. 49:3-70(a)) refers to the comment under § 204(a)(2)(B) of the act with regard to the meaning of "willfully." Section 204(a) (2) (B) thereof provides:
The [Administrator] may by order deny, suspend, or revoke any registration if [he] finds * * * that the applicant or registrant or, in the case of broker-dealer or investment adviser, any partner, officer or director, any person occupying a similar status or performing similar functions, or any person occupying a similar status or performing similar functions, or any person directly or indirectly controlling the broker-dealer or investment advisor * * * has willfully violated or willfully failed to comply with any provision of this act or a predecessor act or any rule or order under this act or a predecessor act * * *.
The Commissioners' Note under this section states:
As the federal courts and the SEC have construed the term "willfully" in § 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b), all that is required is proof that the person acted intentionally in the sense that he was aware of what he was doing. Proof of evil motive or intent to violate the law, or knowledge that the law was being violated, is not required. The principal function of the word "willfully" is thus to serve as a legislative hint of self-restraint to the Administrator. [Uniform Securities Act, § 204, 9C U.L.A.; emphasis added]
Section 15 (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b), like section 204(a) (2) (B) of the Uniform Securities Act, provides for administrative sanctions for any willful violation of the provisions of the act. Although it might be argued that a more stringent requirement as to mens rea should be applied in a criminal prosecution than in administrative action, it is clear the Commissioners applied the same standard to both.
*349 The Commission has consistently held under § 15(b) (5), with some support from the courts both by way of review of the Commission's orders and more recently in criminal cases, that the term "willfully" does not require proof of evil motive, or intent to violate the law, or knowledge that the law was being violated. All that is required is proof that the violator acted intentionally in the sense that he was aware of what he was doing. 5 Loss, Securities Regulation (2d ed. 1969) 3368-3374; see e.g. Hughes v. S.E.C., 85 U.S. App. D.C. 56, 174 F.2d 969, 977 (1949); United States v. Sussman, 37 F. Supp. 294, 297 (E.D. Pa. 1941); Gearhart and Otis, Inc. v. S.E.C., 121 U.S. App. D.C. 186, 348 F.2d 798, 802-803 (1965); United States v. Custer Channel Wing Corp., 247 F. Supp. 481, 494-495 (D. Md. 1965), aff'd 376 F.2d 675, 681 (4 Cir.), cert. den. 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119 (1967).
It is suggested in 2 Loss, supra at 1309, that "willfully" might conceivably mean something less in § 15(b) than it does in the penal provisions of the SEC acts (15 U.S.C.A. § 78ff), and that it means something less when applied to a provision like § 5 of the Securities Act, which is malum prohibitum, than to one of the fraud provisions, which more nearly approaches malum in se. However, Loss states that, as nearly as one can say, the courts are more concerned in criminal cases under § 5 with knowledge of lack of registration than with evil motive or specific intent to violate the law. 6 Loss, supra at 4126. He also states that it seems reasonably settled that "willfully" in the SEC statutes does not have any "bad purpose" connotation (beyond whatever bad faith concept is inherent in the fraud provisions as distinct from the registration provisions and the like). 5 Loss, supra at 3374. See United States v. Sussman, supra, 37 F. Supp. at 296; see also United States v. Simon, 425 F.2d 796 (2 Cir.1969), cert. den. 397 U.S. 1006, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970) (both cases involving criminal prosecutions for violations of provisions of the federal securities law).
*350 In the few jurisdictions that have decided the question of whether a criminal intent is necessary under the criminal penalty section of the Uniform Securities Act, the courts appear to have required only an intent to do the proscribed act. While the decisions of sister states are not binding, they are of signal import and value as guiding precedent where the objective of a statute is the standardization of a particular subject matter; in this case the area of securities regulation. State v. Weissman, 73 N.J. Super. 274, 281 (App. Div.), certif. den. 37 N.J. 521 (1962).
In State v. Burrow, 13 Ariz, App. 130, 474 P.2d 849, 851 (Ct. App. 1970) (which involved a prosecution for the sale of unregistered securities, and for carrying on transactions as an unregistered dealer), the court stated:
Our Supreme Court has held that in the area of criminal intent, legislative policy fixes two types of crimes, those which require an evil intention and those which the mere doing of the act is criminal, in which case only an intent to so act is required. These latter acts, commonly denominated malum prohibitum, usually involve conduct which so threatens the public that there must be absolute prohibition. Troutner v. State, 17 Ariz. 506, 154 P. 1048 (1916); 21 Am.Jur.2d Criminal Law §§ 81-91.
In the instant case we are confronted with statutes dealing with the sale and registration of securities and sales by unregistered dealers. The trial court, in delivering the instruction it did, obviously construed the statute as malum prohibitum.
The general rule is that the intent of the legislature is determinative of whether a criminal statute is malum prohibitum or malum in se. Troutner, supra; State v. Cutshaw, 7 Ariz. App. 210, 437 P.2d 962 (1968); 21 Am.Jur.2d Criminal Law § 91. The two sections here, A.R.S. § 44-1841 and § 44-1842, in all inclusive language prohibit the acts in question. No element of specific intent is mentioned, and the very subject matter of the statutes in question as a creature of modern commercial practice places them in the mainstream of modern "strict liability" statutes as malum prohibitum crimes are sometimes denominated.
In accord is State v. Hodge, 204 Kan. 98, 460 P.2d 596 (Sup. Ct. 1969) (involving prosecution for the sale of unregistered securities, and failure to register as a broker-dealer), in which the court stated that no specific intent is necessary to constitute the offense where one violates the *351 securities act except the intent to do the act denounced by the statute. The court relied upon the Commissioners' Note relating to the manner in which the federal courts have construed the term "willfully" in the Securities and Exchange Act of 1934. See also Nelson v. State, 355 P.2d 413, 419 (Okl. Cr. App. 1960) (prosecution for selling unregistered securities), in which the court stated that the burden is placed upon the offeror or seller of stock to ascertain if the security may be sold lawfully, and that the law requires registration of the security and the seller to guarantee protection to the public against blue-sky transactions. The court continued:
The law, however, puts the burden of such investigation on the party selling, and it is no excuse if he fails to ascertain if such security cannot in fact be legally sold. He is bound to make such investigation, if the security is not issued by him, before attempting to make a sale thereof, and we may well presume that he did so, as it would not seem reasonable to presume that, knowing the law as he must, he would go ahead with the sale without an independent investigation. [at 419]
The public sale of corporate securities is a sensitive, highly and peculiarly specialized field of activity to which the investing public is exposed and one in which the public is generally not well versed. The potential for serious financial injury to the buying public mandates that all sellers of securities be charged with knowledge of and compliance with all rules and regulations governing such sales.
In view of all of the foregoing, the history of the legislation on this subject and the nature and purpose of the act, it is our conclusion that a specific criminal intent, an evil motive, or knowledge that the law was being violated is not required in order to find a criminal violation of the New Jersey Securities Law. To the contrary, all that is required is that the State prove the defendant acted intentionally in the sense that he was aware of what he was doing.
The pretrial order denying the state's requests to charge is reversed and the matter remanded for trial.